IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00059-MR

BRYAN KEITH HALL,           )
                            )
            Plaintiff,      )
                            )     **MEMORANDUM OF**
       vs.                  )     **DECISION AND ORDER**
                            )
                            )
B. SETSER, et al.,          )
                            )
            Defendants.     )
_____ )

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 26] and Plaintiff's Motion to Withdraw as Attorney [Doc. 37].

**I.     PROCEDURAL BACKGROUND**

Plaintiff Bryan Keith Hall ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 for the violation of his Eighth Amendment rights while incarcerated at Foothills Correctional Institution ("Foothills") in Spruce Pine, North Carolina, based on the use of excessive force by Defendants Bennett Setser, III; Brandon Trivette; Samuel Poole; and Ethan Mangum, all identified as officials at Foothills.[1] [Doc. 1]. In his unverified Complaint,

---

[1] Although Plaintiff's Complaint was filed *pro se*, he is now represented by counsel.

Plaintiff alleged that that, on May 14, 2020, at Foothills Minimum Custody Unit (FMCU), Defendants assaulted him while he was restrained in handcuffs. Plaintiff alleges that he was knocked unconscious during the assault and that he suffered a broken nose requiring reconstructive surgery, as well as a hematoma on his forehead, a badly bruised shoulder, and a concussion. [Id. at 4]. Plaintiff seeks monetary relief only. [Id. at 5].

Plaintiff's Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A and Plaintiff proceeded with his Eighth Amendment claim. [Doc. 7]. On March 1, 2023, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 26]. Defendants argues that they are entitled to summary judgment because Defendants did not violate Plaintiff's constitutional rights and qualified immunity bars Plaintiff's claim. [Doc. 27]. In support of their motion, Defendants submitted a memorandum; their own Declarations; Plaintiff's North Carolina Department of Public Safety[2] (NCDPS) Offender Information Sheet, a summary of Plaintiff's infraction history, an Incident Report, disciplinary records, the NCDPS Use of Force Policy, and unpublished case law. [Docs. 27, 28, 28-1 to 28-11].

---

[2] The NCDPS is now called the North Carolina Department of Adult Corrections (NCDAC). The Court, however, will refer to it as the NCDPS here in conformity with the forecast of evidence before the Court.

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 29]. The next day, Plaintiff's counsel, Locke G. Ho, appeared in the case "with respect to Summary Judgment briefing." [Doc. 27]. After the Court granted Plaintiff more time to respond to Defendants' summary judgment motion, another attorney with Mr. Ho's firm, William Walker, also filed an appearance as counsel for Plaintiff "with respect to Summary Judgment briefing." [3/8/2023 Text Order; Doc. 32]. Thereafter, Plaintiff responded to Defendants' motion. [Doc. 34]. Plaintiff submitted a memorandum, a copy of the Complaint, his own Declaration, and his medical and grievance records. [Docs. 34, 34-1 to 34-4]. Defendants notified the Court that they would not be filing a reply. [Doc. 36].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

## III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.

In May 2020, Plaintiff was a prisoner of the State of North Carolina incarcerated in the FMCU. [Doc. 34-2 at ¶ 2: Hall Aff.]. At that time, Defendant Setser was a Sergeant at Foothills and Defendants Trivette,

5

Poole, and Mangum were Correctional Officers there. [Doc. 28-6 at ¶ 3: Setser Dec.; Doc. 28-7 at ¶ 3: Trivette Dec.; Doc. 28-8 at ¶ 3: Poole Dec.; Doc. 28-9 at ¶ 3: Mangum Dec.]. On May 12, 2020, Plaintiff filed a grievance concerning Defendant Poole. [Doc. 34-2 at ¶ 3]. Before May 14, 2020, Plaintiff had not been charged with any disciplinary infractions and did not cause trouble as an inmate. [Id. at ¶ 4]. On May 14, 2020, at approximately 8:00 a.m., Assistant Unit Manager Misty Crawford called Plaintiff to Defendant Setser's office and told Plaintiff that his May 12, 2020 grievance concerning Defendant Poole needed to be redone. Plaintiff asked for another grievance to fill out and Ms. Crawford directed Plaintiff to leave the office. Plaintiff complied. [Id. at ¶ 6]. While Plaintiff was in the FMCU dayroom preparing for work, several officers, including Defendants Trivette, Poole, and Mangum, grabbed Plaintiff's arms, threw him against a wall, and patted him down. Plaintiff did not resist this pat-down search. [Id. at ¶ 7]. Defendants Trivette, Poole, and Mangum, with other officers, then led Plaintiff to the shower, where Defendant Mangum stripped search Plaintiff. [Id. at ¶ 8]. Defendant Trivette then handcuffed Plaintiff and ordered him to sit on his bed while the other officers, including Defendants Poole and Mangum, searched Plaintiff's locker. Plaintiff submitted to handcuffs without

any resistance and sat on his bed during the search. Plaintiff did not become irate, argue with, or curse at Defendant Trivette at any time. [Id. at ¶ 9].

At around 9:00 a.m., Defendants Trivette, Poole, and Mangum, led Plaintiff to the back hallway behind Defendant Setser's office where Defendant Setser was waiting. [Id. at ¶ 10]. Defendant Poole warned Plaintiff that, if he moved, Plaintiff's arms would be broken. [Id.]. At no point while being escorted to or in the back hallway did Plaintiff jerk away from, argue with, or offer any resistance. [Id.]. Despite Plaintiff's complete compliance, Defendant Setser said, "Put his fucking ass on the floor." [Id. at ¶ 11]. Defendants Trivette and Poole then slammed Plaintiff headfirst onto the floor, knocking Plaintiff unconscious on impact. [Id. at ¶ 12]. When Plaintiff regained consciousness, he was on the floor. Defendant Poole was on Plaintiff's left side and Defendant Mangum was on his right. Defendant Setser had mounted Plaintiff's back and pinned his knee below Plaintiff's neck. Holding a mace can on the bridge of Plaintiff's nose, Defendant Setser pulled Plaintiff's head back, breaking Plaintiff's nose. [Id. at ¶ 13]. Defendant Mangum then punched Plaintiff on his right temple, knocking Plaintiff unconscious again. When Plaintiff regained consciousness, Defendants

7

Poole and Mangum were dragging Plaintiff down the sidewalk to a gate.[3] [Id. at ¶¶ 14-15].

At approximately 10:05 a.m., Nurse Candy Stiles evaluated Plaintiff's injuries in response to Plaintiff declaring a medical emergency. Before Nurse Stiles came to see the Plaintiff, she was told that the use of force was not related to Plaintiff's medical emergency. Plaintiff told Nurse Stiles about the details of the incident, his broken nose, a knot on his head, and his other injuries. After Nurse Stiles established that Plaintiff needed outside emergency room care, she was told that there had been a use of force in connection with Plaintiff's medical emergency. [Id. at ¶ 17]. At around 3:18 p.m., Plaintiff was transported to the emergency room at UNC Health Blue Ridge – Morganton, where medical personnel took x-rays and CT scans of Plaintiff's head, face, and left shoulder. [Id. at ¶ 18]. As a result of the use of force, Plaintiff suffered a broken nose and head and shoulder trauma. Plaintiff did not sustain any injuries the day of the incident before Defendants' use of force on him. It is noted that Defendants' forecast of evidence includes the statement that two reliable "confidential informants," who

---

[3] Defendants' forecast of evidence of this incident almost entirely contradicts Plaintiff's version. For summary judgment, however, the Court must take Plaintiff's forecast as true in accord with Rule 56, and thus determines that this difference in evidence creates a genuine issue of fact for trial.

refused to write written statements, told Misty Crawford that Plaintiff was in an altercation with another inmate "out on the yard" earlier that day, which caused Plaintiff's nose to bleed. [Doc. 28-3 at ¶ 7].[4] After the use of force, Plaintiff made multiple sick call appointments to report severe pain from his nose, head, and shoulder injuries. About a month later, Plaintiff underwent surgery to repair his broken nose. [Id. at ¶ 19; Doc. 34-5 at 1].

As a result of the incident, Plaintiff was charged with three disciplinary offenses, including threatening to harm or injure staff (B18), use of profanity toward staff (B24), and disobeying an order (B25). [Doc. 28-4 at 13]. Plaintiff pleaded not guilty to these charges, but he was found guilty after a hearing. [Id. at 3]. Plaintiff was released from custody on June 24, 2020.[5] [Doc. 28-3 at 7].

There is no video evidence before the Court. Defendants' forecast of evidence includes an Incident Report related to the "unanticipated use of force," which states that there was "[n]o camera footage available for archiving purposes due to the location at FMCU." [Doc. 28-3 at 3].

---

[4] On summary judgment, of course, the Court can only consider admissible evidence, and Defendant do not cite to any hearsay exception that may allow this testimony.

[5] The Court takes judicial notice that Plaintiff is again in NCDPS custody and is now housed at Lumberton Correctional Institution in Lumberton, North Carolina.

9

## IV. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

10

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

Here, the forecast of evidence in the light most favorable to Plaintiff shows that Defendants Setser, Trivette, Poole, and Mangum assaulted Plaintiff in a hallway at FMCU where no cameras were present when Plaintiff was handcuffed, offering no resistance, and complying with orders. From this forecast of evidence, a reasonable jury could conclude that Defendants applied force maliciously and sadistically for the purpose of causing harm and not to restore order by compelling compliance with prison rules. The Court, therefore, will deny Defendants' motion for summary judgment and leave the determination of whether these Defendants used excessive force to the jury.

## B. Qualified Immunity

Defendants also claim that qualified immunity bars Plaintiff's claim. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Defendants argue that they are entitled to qualified immunity because no constitutional violation occurred.[6] [Doc. 27 at 11]. Because the jury must decide whether the Defendants actions violated Plaintiff's constitutional

---

[6] Defendants also claim, without support or argument, that even if Plaintiff's rights were violated, "such rights were not clearly established at the time of Defendants' actions." [Doc. 27 at 11]. The Court declines to further address this plainly incorrect and unsupported assertion.

rights, the Court concludes that qualified immunity does not bar Plaintiff's claim against the Defendants. The Court, therefore, will deny Defendants' summary judgment motion on this ground as well.

## V. PLAINTIFF'S MOTION TO WITHDRAW AS COUNSEL

Plaintiff's attorney, Locke G. Ho, moves the Court to allow him to withdraw as Plaintiff's counsel of record. [Doc. 37]. As grounds, Mr. Ho states that he is leaving employment with his law firm and that, on June 5, 2023, he will begin a judicial clerkship with the United States District Court for the Eastern District of Michigan. As such, Mr. Ho states he will be unable to engage in the practice of law or represent clients. [Id. at 2]. For good cause shown and because Plaintiff's other attorney, William Walker, continues to represent Plaintiff, the Court will grant this motion and allow Mr. Ho to withdraw as counsel for Plaintiff.

## VI. CONCLUSION

For the reasons stated herein, the Court will deny Defendants' motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 26] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Withdraw as Counsel [Doc. 37] is **GRANTED** in accordance with the terms of this Order.

The Clerk is respectfully instructed to update the docket in this matter to reflect the true full names of B. Setser as Bennett Setser, III, and B. Trivette as Brandon Trivette.

**IT IS SO ORDERED**.

Signed: May 29, 2023

Martin Reidinger
Chief United States District Judge